1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONNA RALLENS,

11              Plaintiff,                          No. CIV S-06-1609 GGH

12        vs.

13   MICHAEL J. ASTRUE,[1]                          ORDER

14   Commissioner of Social
     Security,

15              Defendant.

16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying plaintiff's applications for  Disability Insurance Benefits

19   ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the

20   Social Security Act ("Act").

21              Disability claims based on back conditions are notoriously difficult to analyze.  It

22   has been the undersigned's experience that persons with seemingly similar objective evidence

23   demonstrate markedly different effects from their back issues.  And, it could well be that

24   _____

25       [1]  Michael J. Astrue became Commissioner on February 12, 2007.  Accordingly, he
     should be substituted as defendant in this suit.  Fed. R. Civ. P. 25(d)(1).  No further action need
26   be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §
     405(g).

                                                    1

1  mental/emotional overlays play a significant part in one's perception of what he or she can

2  actually do.  The difficult role of the ALJ is to ferret out the real from the imagined.

3          For the reasons that follow, plaintiff's motion for summary judgment will be

4  granted, and the Commissioner's cross-motion for summary judgment will be denied.  The Clerk

5  of Court will be directed to enter judgment for the plaintiff.

6  BACKGROUND

7          Plaintiff, born July 7, 1951, applied for DIB and SSI on November 27, 2002.  (Tr.

8  at 90-92, 304-306).  Plaintiff alleged she became unable to work September 5, 2002, due to

9  "severe degenerative disc disease."  (Tr. at 97).  In an initial decision dated May 17, 2004,

10  administrative law judge ("ALJ") Antonio Acevedo-Torres determined that plaintiff was not

11  disabled.[2]  (Tr. at 38-49).  The Appeals Council granted plaintiff's request for review and

12

13          [2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
     Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to
14  disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
     part, as an "inability to engage in any substantial gainful activity" due to "a medically
15  determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
     A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
16  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
     137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

17

18          Step one:  Is the claimant engaging in substantial gainful
            activity?  If so, the claimant is found not disabled.  If not, proceed
            to step two.
19          Step two:  Does the claimant have a "severe" impairment?
            If so, proceed to step three.  If not, then a finding of not disabled is
20          appropriate.
            Step three:  Does the claimant's impairment or combination
21          of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
            404, Subpt. P, App.1?  If so, the claimant is automatically
22          determined disabled.  If not, proceed to step four.
            Step four:  Is the claimant capable of performing his past
23          work?  If so, the claimant is not disabled.  If not, proceed to step
            five.
24          Step five:  Does the claimant have the residual functional
            capacity to perform any other work?  If so, the claimant is not
25          disabled.  If not, the claimant is disabled.

26  Lester v. Chater, 81 F.3d 821, 828, n.5 (9th Cir. 1995).

remanded the case for further proceedings to evaluate the opinion of plaintiff's treating physician, Dr. William Wood, to further evaluate plaintiff's obesity and tobacco use, and to obtain the testimony of a vocational expert. (Tr. at 82-84). In a second, controlling decision issued November 8, 2005, following a supplemental hearing, ALJ Acevedo-Torres again found that plaintiff was not disabled. (Tr. at 15-28). The ALJ made the following findings (Tr. at 27-28.):

1.      The claimant met the disability insured status requirements of the Act on September 1, 2002, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.

2.      The claimant has not engaged in substantial gainful activity since alleged onset date.

3.      The medical evidence establishes that the claimant has multiple severe impairments. These include severe back pain with occasional pain in her lower extremities secondary to spondylolisthesis and stenosis of the lumbar spine with multi-level degenerative disc disease of the lumbar spine. The claimant is also obese and addicted to tobacco. However, the claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.

4.      The undersigned finds that the claimant's allegations regarding the degree of her pain and limitation are not fully credible for the reasons stated above.

5.      The claimant has the following residual functional capacity: the claimant remains capable of lifting 20 pounds occasionally, 10 pounds frequently. She is able to stand, walk and sit for up to six hours total. All postural activities are limited to occasional. There are no nonexertional limitations (20 C.F.R. §§ 404.1545 and 416.945).

6.      The claimant is 54 years old, which is defined as a closely approaching advanced age individual (20 CFR §§ 404.1563 and 416.963).

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146, n.5, 107 S. Ct. at 2294, n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

7.    The claimant possesses a 10th grade education (20 CFR § 404.1564 and 416.964).

8.    The vocational expert testified that the claimant has transferable skills to other jobs which require light exertion. Her skills are not transferable to sedentary jobs.

9.    The vocational expert testified that the claimant is able to perform her past relevant work as an Avon sales person, a clerk and a waitress, as these jobs are regularly performed in the national economy.

10.   The claimant is also able to perform other jobs.  The vocational expert testified that considering the claimant's residual functional capacity and other vocational factors, the claimant is able to perform the following jobs which exist in vocationally significant numbers in the national economy: At the light exertional level, the claimant would be able to perform five other jobs.  These jobs were as a cashier/checker.  This job has a SVP of 3 and is located in the Dictionary of Occupational Titles at 211.462-014. There are 110,000 jobs available in California and one million in the United States.  The claimant could also work as an information clerk.  This job has an SVP of 2.  See the Dictionary of Occupational Titles at 237.367-018; there are 9,000 available in California and 69,000 in the United States.  The claimant could work as a survey worker.  This job has a SVP of 2.  See the Dictionary of Occupational Titles at 205.367-054 (11,000 jobs available in California and 110,000 in the United States).  Finally, the claimant would be able to work as a produce layer.  This job has an SVP of 1.  There are 3,000 jobs available in California and 96,000 in the United States.  This job is located in the Dictionary of Occupational Titles at 299.587-010.

11.   The claimant's tobacco abuse disorder is found to be not "material" to a finding of disability.

12.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

The ALJ also considered plaintiff's obesity and found as follows (Tr. at . 24):

In making this determination, the undersigned has considered the claimant's obesity (see Social Security Ruling 02-1p).  The undersigned notes that all of the consultative examiners have noted the claimant's weight when forming the[ir] opinions, and thus, their opinions take[] into account this disorder.  The undersigned also notes that as of July 2005, the claimant's BMI is 31.6, which is abnormal, but not severely obese.  On this date, the claimant weighed 190 pounds and is five foot, five inches in height.  (See Exhibit 8F).

4

ISSUES PRESENTED

Plaintiff contends the ALJ failed to assess her alleged mental impairments of depression and panic disorder, improperly rejected the opinions of her treating physicians regarding her physical residual functional capacity, and improperly rejected plaintiff's testimony of pain and limitations.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A.  Mental Impairments

Plaintiff contends the ALJ failed to evaluate her mental impairments of panic disorder and depression.  Plaintiff relies on the following evidence:  (1) June 2003, plaintiff complained to neurologist Dr. Michael Bronshvag that "[s]he has been depressed, with difficulty sleeping" (Tr. at 163); (2) March 2004, plaintiff complained to her treating physician, general practitioner Dr. William Wood, that she experiences panic attacks "almost daily, very often at night, afraid of the unknown" (Tr. at 200); (3) May 2004, Dr. Bronshvag noted to plaintiff's

counsel that plaintiff was "'troubled' by 'panic attacks,'" and "clearly has at least 'some'

psychological difficulties and you may (may not) want to obtain psychological-psychiatric

consult relevant to those aspects of the case" (Tr. at 263, 264); (4) March 2004, family

practitioner Dr. Donald Daniel included "major depression/panic attack (situational)" in a list of

diagnoses that could reasonably produce work-related limitations (Tr. at 289), and in August

2005 opined that " [t]he progression of [plaintiff's] disease state has resulted in major depression

(fatigue, insomnia, anhedonia, loss of self-esteem and confidence) and panic disorder" and

plaintiff "has developed a labile emotional state by virtue of her failing health, panic disorder

and major depression" (Tr. at 295, 293); (5) plaintiff testified she feels worthless, meaningless,

hopeless and afraid, and takes antidepressant medications (Tr. at 365); and (6) plaintiff's mother

testified that plaintiff "seems depressed a lot" (Tr. at 345).

The ALJ did not address this evidence in his decision, although he questioned

plaintiff about it at the supplemental hearing.[3]  Plaintiff testified that while she had not been

referred to a psychologist or psychiatrist, her medication (implicitly, the pain medication

---

[3]  The administrative law judge questioned plaintiff as follows (Tr. at 370-371; see also
(Tr. at 347):

Q:    You were talking about depression.  What psychiatrist or psychologist do you see?
A:    I've just seen Dr. Wood and Dr. Daniel.
Q:    And that Dr. Daniel, he's a psychiatrist or what?
A:    No.
Q:    Is he a psychologist or no?
A:    I'm not sure.
Q:    And what kind of doctor is he?  Besides being a good doctor, what kind of
      doctor is he?  What's his line of expertise?  Family doctor or what?
A:    Family doctor.
Q:    Oh, well, that's not a psychiatrist, nor a psychologist.  Has this family doctor ever
      referred you to a psychiatrist or a psychologist and when and to which one?
A:    No, he hasn't.
Q:    That medication for depression, they are – that's a big word and they produce a very, very
      bad side effect, when given the by experts.  They give you something for depression
      and you develop inside – they give you something else.  That's the way it goes.  That's
      the way it does with this family doctor.
A:    It helped me.
Q:    They would do better [to] refer to the – because sometimes they'[re] desperate . . .

Vicodin) had helped her.[4]  (Tr. at 370, 347).  Plaintiff's counsel argued at the first hearing (and not relevantly at the second hearing) only that plaintiff's depression demonstrated she misses work and would do so if she could.[5]

The determination whether an impairment is severe is based on a review of the entire record, as well as an assessment of the claimant's credibility.  Smolen v. Chater, 80 F. 3d 1273, 1290 (9th Cir. 1996); see also SSR 96-3p.  A "de minimis screening device," Bowen v. Yuckert, 482 U.S. 137, 154, 107 S.Ct. 2287 (1987), the severity determination requires only that the underlying impairment have "more than a minimal effect on an individual's ability to work," Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988).

The functional limitation criteria of 20 C.F.R. §§ 404.1520a and 416.920a provide the framework for the ALJ's assessment whether a mental impairment is severe, i.e., whether impairments in the following areas more than minimally limit a claimant's ability to perform basic mental work activities:  activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  Basic mental work activities include: "Understanding, carrying out, and remembering simple instructions; Use of judgment; Responding appropriately to supervision, co-workers and usual work situations; and Dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b)(3) thru (6).  An identified

---

[4]  There is no evidence in the record that plaintiff was prescribed antidepressive or other psychoactive medication.

[5]  Plaintiff's counsel argued in pertinent part (Tr. at 352):

Now we are not advancing a psychiatric case here.  I am not suggesting her depression is a separate and independent impairment.  What I am suggesting to you is that of a natural consequence of a woman who has worked hard all her life and got a lot of dignity, a lot of respect and a lot of self esteem out of the work that she did having to stop work.  It would be no different for you or me.  You get depressed, you feel like you– just what do you do.  This work defined us your work defines you, my work defines me and her work defined her.  That is all gone now so she is depressed and I would ask you to recognize that is a symptom that is just one more indication that this woman who is highly motivated would be working if she could, and who stopped working because she has a very severe degenerative process in her back and spinal stenosis.

impairment that is itself nonsevere must be viewed in combination with all of a claimant's impairments to assess their combined impact. 20 C.F.R. § § 404.1523, 416.923;  42 U.S C. §§ 423(d), 1382c (a)(3)(G).

No evidence was presented to support a finding that plaintiff's depression and panic attacks more than minimally impair her ability to perform basic mental work activities. There is no error in the ALJ's conclusion, sub silentio, that these are nonsevere impairments within the meaning of the Act.  Nor does the evidence support a finding that these alleged impairments have a significant nonexertional impact on plaintiff's physical residual functional capacity.  The diagnoses of Drs. Wood and Daniel to the contrary are not controlling for the reasons discussed below.  Moreover, plaintiff's symptoms were helped by pain medication and were not so significant that plaintiff sought expert psychological care or her physicians made such a referral. "The ALJ is permitted to consider lack of treatment in his credibility determination."  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  If a claimant's symptoms are not severe enough to motivate the claimant to seek treatment, this is " powerful evidence regarding the extent" of the symptom.  Id., citing Fair v. Bowen, 885 F. 2d 596, 604 (9th Cir. 1989).

Accordingly, the court finds that the ALJ's failure to address the impact of plaintiff's depression or panic attacks was harmless.

B.  Treating Physicians

Plaintiff contends the administrative law judge improperly discounted the opinions of her physicians, Drs. William Wood and Donald Daniel, from whom plaintiff sought treatment for lumbar back pain and right leg radiculopathy.  Both physicians opined that plaintiff is unable to perform any gainful employment.

"[M]ore weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. . . .[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing

8

'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1996); see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); 20 C.F.R. § § 404.1527(d), 416.927(d).

The objective medical evidence, accurately noted by the ALJ (Tr. at 18, 21), includes:  (1) an August 2002 x-ray showing "moderately severe degenerative disc changes at L3-4" (Tr. at 260); (2) a September 2002 MRI revealing "severe degenerative disc disease at L3-4," "significant right-sided neural foraminal narrowing at L3-4 with mass effect and displaced exiting right L3 nerve roots/spinal nerve," "multilevel spinal stenosis" most marked at L2-3, less so at L3-4, and "mild scattered degenerative changes elsewhere" (Tr. at at 156-157);  (3) an April 2004 x-ray demonstrating "degenerative disc disease at L3-4, spondylolisthesis of L5 uponS1 and L2 upon L3 remain stable with flexion and extension," without subluxation with motion.  (Tr. at 266); and (4) an April 2004 MRI showing "advanced degenerative changes at L3-4 with ligament thickening and fact hypertrophy . . . produc[ing] "mild central canal spinal stenosis . . . [and] right forminal narrowing with possible foraminal nerve root impression;" "mild central canal spinal stenosis at L2-3" and "small broad-based bulge of the disc with minimal impression on the ventral thecal sac."  (Tr. at 267-270).

Dr. Wood's treatment notes commence June 2002.  In September 2002, Dr. Wood directed plaintiff to stop working for a couple of months.  (Tr. at 242).  He extended this period until January 2003 when he determined plaintiff was unable to return to any work.  (Tr. at 230). In a March 2004 letter, Dr. Wood summarized plaintiff's medical conditions and care.  He noted that he directed plaintiff to stop working "[b]ased upon the severity of [her] degenerative changes, spinal stenosis and nerve root stenosis," his experience that "degenerative changes this severe will only worsen," and his opinion that a successful surgery would be unlikely given the "pervasiveness" of plaintiff's impairments.  Dr. Wood opined that plaintiff was limited to lifting, carrying, pushing or pulling less than 5 pounds; standing and/or walking less than 2 hours a day (up to 30 minutes at one time); sitting less than 2 hours a day (up to 30 minutes at one time);

9

1   occasional bending but never climbing, balancing, crouching, crawling, kneeling or squatting;

2   and needed to lie down periodically.  (Tr. at 194-199).  In January 2005, Dr. Wood opined that

3   plaintiff was limited to lifting and carrying less than 5 pounds; standing and/or walking less than

4   1 hour a day (up to 10-12 minutes continuously); and sitting less than 1 hour a day (up to 10 -

5   15/18 minutes continuously).  (Tr. at 297-303).

6          In 2005, plaintiff commenced treatment with Dr. Donald Daniel, a family

7   practitioner specializing in personal injury and workers' compensation.  After three months of

8   treatment, "examined every 30 days," Dr. Daniel opined, in August 2005, that plaintiff was

9   limited to frequent lifting of objects weighing up to 5 pounds; occasional lifting up to 10 pounds;

10  two hours of sitting per day (30 minutes continuous); one hour standing/walking (30 minutes

11  continuous); limited pushing and pulling; never bending, stooping, kneeling or performing other

12  postural changes; and cannot perform even low stress work.  In an addendum to this assessment,

13  Dr. Daniel concluded that plaintiff was "totally and permanently disabled and incapable of

14  performing any work capacity."  (Tr. at 283-296).

15         The ALJ rejected these opinions of Drs. Wood and Daniel in favor of the opinions

16  of the other physicians who examined plaintiff:  Dr. Michael Bronshvag (neurosurgeon), Dr.

17  John Yen (neurologist), Dr. Steve McIntire (orthopedist), and Dr. James O'Hara (orthopedist)

18  The ALJ reasoned (Tr. at 25-26):

19         Although normally, a treating physician's opinion is to be given greater
           evidentiary weight, this is not the case when the opinion evidence is not supported
20         by other objective medical evidence or is contraindicated by other findings.
           Additionally, Dr. Wood's stated limitations are even inconsistent with the
21         claimant's reports in the record and her testimony regarding her daily activities
           and four other examining physicians, who have reviewed the same MRI's and x-
22         rays and who have examined the claimant, have not noted objective medical
           findings of the same severity as Dr. Wood and Dr. Daniel and who have all opined
23         that the claimant remains capable of performing at least light work.  This includes
           the most recent assessment of Dr. Bai [Dr. Feng Bai (orthopedist)].
24
           Additionally, these four examining physician's findings are clearly typed contrary
25         to the illegible progress notes provided by Dr. Wood and Dr. Daniel.  Both Dr.
           Bronshvag's and Dr. Yen's exam do not support the degree of pain and limitations
26         alleged by the claimant.  Neurological, motor and sensory exams were all normal.

There was no evidence of muscle spasms.  While there was evidence of limitations in range of motion, tenderness and occasional positive straight leg raising, these findings are more consistent with a finding that the claimant is able to perform light work than finding that she is unable to perform any work.

The undersigned also notes that while Dr. Bronshvag opined the claimant was precluded from "substantial work," opinions regarding disability are reserved for the commissioner and he later stated in the report that the claimant needed vocational rehabilitation.  Given this statement it appears that he may be stating that the claimant is unable to perform her part work but would be able to perform other work.  The undersigned agrees with this assessment.

Therefore, after re-reviewing the entire record including Dr. Wood's progress notes and the new reports by treating physician, Dr. Daniel, the undersigned again rejects the opinion[] statements by Dr. Wood and the new opinion statements by Daniel.  While both of these physicians are "treating physicians" as defined under 20 C.F.R. §§ 404.1527 and 416.927 the undersigned continues to give less weight to their opinions and more weight to the examining consultative physicians and other examining physicians who have reviewed the record. While both of these physicians have examined the claimant on more occasions than the one-time examining physicians, their opinions are questionable in that they have failed to provide clear objective medical findings as a basis for their opinions and it appears that they are giving more weight [to] the claimant's subjective complaints.

The undersigned finds that clearly if the claimant were as limited as alleged by Dr. Daniel and Dr. Wood, it would appear that objective medical findings of the same severity would have been noted by the other physicians who have examined the claimant during the period disability is being alleged.  However, the four examining physicians' reports clearly contradict the assessments made by Dr. Wood and Dr. Daniel and given these inconsistencies, the undersigned will give more weight to the consultative physicians who have not relied on the claimant's subjective complaints during the exam.

The ALJ further noted that "Dr. Bai's exam did not show evidence of motor or sensory deficits in the lower extremities which would support the need for a cane or support Dr. Daniel's and Dr. Wood's assessment of weakness in the lower extremities."  (Tr. at 26).

Plaintiff contends the ALJ wrongly concluded that (1) Drs. Wood and Daniel failed to provide "clear objective medical findings" for their opinions; (2) their opinions were based upon plaintiff's subjective complaints; (3) Dr. Wood's assessment contradicted plaintiff's own statements; and (4) their progress notes were illegible.  These contentions are without merit, principally because the opinions of Dr. Wood and Daniel are significantly outweighed by the examination findings of the five expert consultative physicians.

Dr. Steve McIntire performed a consultative orthopedic examination March 2003 and reviewed plaintiff's 2002 MRI report and x-ray.  Dr. McIntire diagnosed "right sacroiliac joint arthropathy" and "degenerative osteoarthritis of the lumbar spine."  He found normal reflexes, sensory responses and motor strength in plaintiff's upper and lower extremities.  He opined that plaintiff had no sitting limitations but "would be limited to six hours of walking or standing in an eight-hour day with two hours of continuous walking or standing.  She should not lift or carry more than 20 pounds frequently or 30 pounds occasionally. . . . She should lift by bending at the knees and avoid more than occasional stooping activities."  (Tr. at 158-161).

In July 2003, consultative orthopedist Dr. O'Hara examined plaintiff and reviewed all of her pertinent medical records.  He found good strength in plaintiff's lower extremities.  He concluded that plaintiff was not currently a surgical candidate and should expect periodic flare-ups resulting in low back pain treatable with nonsteroidal anti-inflammatory agents, physical therapy, and injections, including epidurals.  Nonetheless, Dr. O'Hara opined that plaintiff "would be a Qualified Injury Worker unless [her] limitations can be accommodated by her employer."  (Tr. at 274-282).[6]

In October 2003, neurosurgeon Dr. John Yen examined plaintiff at the request of Dr. Wood.  Dr. Yen's neurological findings were within the normal range (sensory examination and deep tendon reflexes).  He opined that surgery would not alleviate plaintiff's back pain but a decompressive lumbar laminectomy may relieve her right leg symptoms of pain and numbness; he advised that surgery should be a last resort, and suggested an epidural steroid injection may provide temporary relief, but noted that plaintiff "is not too interested in that at this time."  (Tr. at 191-193).  He did not provide functional limitations.

In June 2003, Dr. Michael Bronshvag, a neurologist, examined plaintiff at the request of her counsel.  Pursuant to his review of plaintiff's medical records and his examination,

---

[6]  The administrative transcript does not include page 9 of Dr. O'Hara's report.

1   including electrodiagnostic studies, Dr. Bronshvag found "no gross or overt sensory or motor

2   deficits," "no pathological reflexes" and "minimal evidence of L4-5 nerve root irritation (right

3   worse than left)."  He concluded that absent surgery (which he conceded would be a difficult

4   decision given the diffuseness of plaintiff's symptoms), plaintiff "is precluded from substantial

5   work" and "in need of conservative care" but was nonetheless a candidate for "vocational

6   rehabilitation-retraining."  (Tr. at 162-168).  In subsequent examinations March and May 2004,

7   Dr. Bronshvag noted that nerve conduction studies "do not demonstrate any nerve root irritation

8   or nerve root damage at this time, but do document borderline peripheral neuropathy of uncertain

9   causation."  He opined that plaintiff should pursue conservative care (he again recommended

10  against surgery due to the "bilateral diffuse" nature of plaintiff's back problems) and vocational

11  rehabilitation to perform full-time light work.  (Tr. at 271-273, 262-265).

12          Finally, pursuant to a July 2005 consultative examination, orthopedist Dr. Bai

13  found upon examination that plaintiff has decreased range of motion of the lumbar spine, diffuse

14  muscle tenderness without muscle spasm in the lower lumbar and cervical paraspinal muscle

15  areas, and normal neurological findings.  Based upon his examination and review of plaintiff's

16  medical records, Dr. Bai opined that plaintiff is able to lift and carry 25 pounds occasionally and

17  10 pounds frequently, alternate sit-stand or stand and walk up to 6 hours each in an 8-hour work

18  day, bilaterally reach and manipulate without limitation, and should avoid frequent performing of

19  any of the following:  walking on uneven territory, climbing, stooping, kneeling and crouching.

20  (Tr. at 249-259).

21          The opinions of Drs. Bronshvag,Yen, McIntire, O'Hara and Bai were based upon

22  their respective independent interviews and physical examinations of plaintiff and her medical

23  records, including the objective x-ray and MRI evidence, and independent neurological testing.

24  The conclusions of these physicians are based upon substantive evidence and their respective

25  expertise in neurology and orthopedics, are well supported, and provide substantial evidence for

26  the ALJ's decision.  "Where the opinion of the claimant's treating physician is contradicted, and

13

1   the opinion of a nontreating source is based on independent clinical findings that differ from

2   those of the treating physician, the opinion of the nontreating source may itself be substantial

3   evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews v. Shalala,

4   53 F.3d 1035, 1041 (9th Cir.1995), citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th

5   Cir.1989).  Additionally, more weight is given "the opinion of a specialist about medical issues

6   related to his or her area of specialty than to the opinion of a source who is not a specialist."  20

7   C.F.R. §§ 404.1527(d)(5);  416.927(d)(5).

8              Reference must be made to the recent case of Orn v. Astrue, __F.3d__, 2007 WL

9   2034287 (9th Cir. 2007).  In that case (temporary page citation at *5), the court held: "When an

10  examining physician relies on the same clinical findings as a treating physician, but differs only

11  in his or her conclusions, the conclusions of the examining physician are not 'substantial

12  evidence.'" However, two reasons exist why that rule is inapplicable here.  The examining

13  physicians clearly relied on differing clinical findings, even if one could decipher the clinical

14  findings of the treating physician.  While the radiological information was the same, the total

15  examination picture was not.  Nerve conduction studies and plaintiff's ability to perform various

16  movements during the exam were not the "same" as plaintiff's treating physicians indicated.

17  Secondly, the undersigned does not view Orn as displacing the well established rule that the

18  conclusions of specialists are often given more deference than those of general practitioners.

19  There would be no need to refer persons to specialists if all the sophisticated analyses could be

20  undertaken by general practitioners.

21             Plaintiff's specific challenges are without merit.  The ALJ's observation that the

22  progress notes of Drs. Wood and Daniel are illegible is a fair statement overall but the essential

23  findings are decipherable and did not require that the ALJ recontact plaintiff's treating physicians

24  for clarification (20 C.F.R. §§ 404.1412(e), 416.912(e)).   To the extent these doctors' findings –

25  even if "clear and objective" and uncontradicted by plaintiff's own statements– are inconsistent

26  with the findings of the consultative examining physicians, the latter were properly relied upon

due to their greater expertise.  Finally, it is well established that if a claimant's subjective complaints are not fully credible (as concluded infra), then a physician's opinion based upon those complaints is unreliable.  Sandgathe v. Chater, 108 F.3d 978, 980 (1997).

Accordingly, the ALJ's reasons for rejecting the opinions of plaintiff's treating physicians are specific and legitimate and supported by substantial evidence.

C.  Credibility Assessment

Plaintiff contends the ALJ erred in discrediting her testimony of pain and limitations, failed to assess the effectiveness and side effects of her medications, and failed to consider the testimony of plaintiff's mother.

The ALJ recounted plaintiff's testimony (Tr. at 23):

The claimant [] testified that she is unable to work due to severe back pain with radiation into her lower extremity.  She reports that while she takes pain medication, these medications only take[] the edge off for 2 to 3 hours and she is never completely free from pain.  She reports she is not able to sleep for more than 3 hours at a time and takes up to 4 naps during the day.  She testified she can walk only the length of 2 and a half houses and/or half a block.  She can stand for only a half an hour and can sit for only 2 hours.  She must switch positions frequently.  She estimates she can lift no more than 5 to 10 pounds.  She reports she spends most of the day reclining.  While she helps perform housework including laundry and cooking, she is able to perform these jobs only intermittently and her husband is primarily responsible for cooking and housekeeping.  She reports she must use a cane to walk, especially when going out as her knees have collapsed and she has fallen.  (The undersigned notes that there is no record that the claimant has sought treatment for injuries received in a fall).  She reports that she has gained 35 pounds and is currently 190 pounds at 5 foot 6 inches.

The ALJ discounted plaintiff's testimony for the following reasons (Tr. at 24, 26):

Although the claimant's impairments could reasonably be expected to produce some limitations, the claimant's testimony and statements of record suggest greater limitations than can be shown by the objective medical evidence.

Although the undersigned finds credible the claimant's report of back pain, the undersigned does not fully credit the degree of pain alleged by the claimant.  Rather, the undersigned finds that the record[] supports a determination that while the claimant is clearly unable to perform her past work which she described as requiring medium exertion, she continues to be able to perform light exertion. . . .

The undersigned also does not find credible the claimant's report that she is significantly limited in her ability to perform household chores.  It appears to the

15

1  undersigned that the claimant is exaggerating the degree of limitations.  This
finding is further supported by the fact that she now states that she must use a
2  cane to ambulate and has fallen on multiple occasions.  However, the record fails
to document that she has sought treatment for injuries received in a fall and the
3  most recent consultative physician noted inconsistencies during his exam which
indicate that the claimant does not need a cane to ambulate.  Additionally, Dr.
4  Bai's exam did not show evidence of motor or sensory deficits in the lower
extremities which would support the need for a cane or support Dr. Daniel's and
5  Dr. Wood's assessment of weakness in the lower extremities.

6       "Credibility determinations are the province of the ALJ."  Andrews v. Shalala, 53

7  F.3d 1035, 1043 (9th Cir.1995).  In rejecting a claimant's subjective complaints, the

8  administrative law judge "must provide 'specific, cogent reasons for the disbelief.'  Lester v.

9  Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th

10  Cir. 1990)). Without affirmative evidence showing that the claimant is malingering, the

11  Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.  See

12  Lester, 81 F.3d at 834; Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)."  Morgan v.

13  Apfel, 169 F. 3d 595, 599 (9th Cir. 1999).  "If an ALJ finds that a claimant's testimony relating

14  to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility

15  determination citing the reasons why the testimony is unpersuasive.  See Bunnell v. Sullivan, 947

16  F.2d 341 (9th Cir. 1991). The ALJ must specifically identify what testimony is credible and what

17  testimony undermines the claimant's complaints.  See Lester, 81 F.3d at 834; Dodrill v. Shalala,

18  12 F.3d 915, 918 (9th Cir. 1993); Varney v. Secretary of Health and Human Services, 846 F.2d

19  581, 584 (9th Cir. 1988). In this regard, questions of credibility and resolutions of conflicts in the

20  testimony are functions solely of the [Commissioner].  See Yuckert v. Bowen, 841 F.2d 303, 307

21  (9th Cir. 1988); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)."  Morgan v. Apfel, 169

22  F. 3d at 599.

23       In evaluating whether subjective complaints are credible, the ALJ should first

24  consider the objective medical evidence.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991)

25  (en banc).  However, the ALJ may not find subjective complaints incredible solely because

26  objective medical evidence does not quantify them.  Id. at 345-46.  If the record contains

16

objective medical evidence of an impairment reasonably expected to cause pain, the ALJ then

considers the nature of the alleged symptoms, including aggravating factors, medication,

treatment, and functional restrictions.  See id. at 345-47.  The ALJ also may consider the

applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

and (3) daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR

96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician  and

third party testimony about nature, severity, and effect of symptoms, and inconsistencies between

testimony and conduct, may also be relevant.  Light v. Social Security Administration, 119 F.3d

789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations, see Quang

Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical

diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).

Plaintiff challenges the ALJ's reliance on the objective medical findings to

discount her allegations of disabling pain and limitations.  Although the ALJ acknowledged the

objective medical evidence demonstrating that plaintiff has severe degenerative disc disease and

related degenerative changes, particularly at L3-4 and including spinal stenosis, he nonetheless

concluded that this evidence failed to support the degree of pain and limitations alleged.  Limited

objective findings may legitimately provide one of several clear and convincing reasons for

discrediting a claimant's subjective complaints.  Tidwell v. Apfel, 161 F.3d 599, 602 (9th

Cir.1998); see also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  As is proper, the

ALJ did not rely exclusively on the objective medical evidence to discount plaintiff's subjective

complaints, but relied upon the medical findings and residual functional capacity assessments of

Drs.  Bronshvag, Yen, McIntire, O'Hara and Bai.

\\\\\

\\\\\

\\\\\

1    Plaintiff also challenges the ALJ's finding that inconsistencies of record

2 demonstrate plaintiff exaggerated her symptoms,[7] viz., that (1) plaintiff stated she had fallen

3 several times although the record is devoid of treatment for injuries resulting from falls, (2) Dr.

4 Bai found that plaintiff inconsistently relied on her cane, and (3) the medical record does not

5 show motor or sensory deficits or weakness in plaintiff's lower extremities.

6    Plaintiff testified at the supplemental hearing September 2005 that she uses a cane

7 "[m]ost of the time, especially when I go out because my knees collapsed and I fell a few times"

8 (Tr. at 363), but that she "can walk without it to the bathroom and back" (Tr. at 364).  Plaintiff

9 argues persuasively that this testimony is consistent with the findings of Dr. Bai that "[w]hen

10 [plaintiff] came into the examination room, she used a straight cane in her right [arm] but in the

11 examining room she can walk without straight cane and no foot-drop was noted during

12 ambulation." (Tr. at 251).  Similarly, plaintiff persuasively argues that she never asserted injuries

13 due to falls and the absence of such injuries cannot be relied upon to discredit her asserted need

14 for a cane.  Reasonable inferences support plaintiff's arguments.

15    However, plaintiff's next argument must fail, specifically, that her testimony is

16 consistent with the August 2005 findings of Dr. Daniel that plaintiff has "marked motor loss

17 (weakness) right lower extremity with muscle wasting [and] decreased pin prick sensation right

18 lateral leg and foot" (Tr. at 294), and "requires a cane and occasional use of a walker in order to

19 maintain her stability due to ataxia (weakness and neuropathy of her right leg) originating from

20 her back pathology" (Tr. at 293-294).  The ALJ properly rejected the findings of Dr. Daniel in

21 favor of the examination findings of Drs. Bronshvag, Yen, McIntire, O'Hara and Bai, all of

22 whom made normal reflex, sensory and neurological findings (with the exception of Dr.

23

24    [7] An administrative law judge may rely upon inconsistencies between a claimant's
statements and actions to conclude she is "less than candid."  Smolen v. Chater, 80 F.3d 1273,
25 1284 (9th Cir. 1996).  Contradictions between a claimant's testimony and the medical record
provide an acceptable basis for discrediting the claimant's testimony.  Morgan v. Apfel, 169 F.3d
26 595, 599-600 (9th Cir. 1999).

1   Bronshvag's finding of "minimal evidence of L4-5 nerve root irritation (right worse than left))."

2        Additional factors support the ALJ's credibility assessment.  Most significant is

3   plaintiff's failure to pursue treatment options beyond medication and use of her home spa.  "[A]n

4   unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of

5   treatment . . . can cast doubt on the sincerity of the claimant's pain testimony."  Fair v. Bowen,

6   885 F.2d 597, 603 (9th Cir. 1989); SSR 96-7p.  An ALJ may reasonably infer exaggeration of a

7   claimant's subjective complaints if the claimant "has not put forward any evidence that

8   reconciles the inconsistency between his words and his actions."  Id., at 604.

9        While plaintiff contends the ALJ erred in failing to consider the effectiveness and

10  side effects of her medication,[8] she fails to address the significant absence of additional

11  recommended treatment modalities such as physical therapy, regular stretching or exercise,

12  weight loss, and epidural or spinal injections.  While the examining physicians agree that surgery

13  is not currently a viable option for plaintiff, nearly all recommended some form of treatment

14  beyond medication.  Even Dr. Wood recommended dieting, walking and exercising to tolerance

15  so as not to "slip into 'de-conditioning,'" physical therapy and epidural injections.  (Tr. at 202,

16  203, 228, 234, 243, 245).  Although plaintiff obtained a physical therapy evaluation in May 2003

17  that was optimistic and included treadmill walking and pelvic traction that she could pursue at

18  home (Tr. at 222-223), no follow-up notations are included in the record.  Dr. Wood also

19  recommended that plaintiff stop smoking and explained to her "how tobacco affects her affected

20  leg by reducing blood supply by nicotine action."  (Tr. at 212).  Dr. O'Hara opined that plaintiff

21  should pursue "physical therapy, and injections, including epidurals." (Tr. at 282).  Dr. Yen

22  suggested that an epidural steroid injection may provide temporary relief, but noted that plaintiff

23

24        [8] Plaintiff testified she takes "about four Vicodin a day" (more recently, "every three
    hours") along with the other pain medications Tramadol, Motrin, or Neurontin, which reduce but
25  do not eliminate her pain (Tr. at 333, 341-342, 360, 369); that these medications make her sleep,
    tired and dizzy (Tr. at 365-366); that she had to quit using the more effective Fentanyl patches
26  due to side effects of dizziness, nausea and vomiting (Tr. at 336).

1   "is not too interested in that at this time." (Tr. at 191-193). Dr. Bronshvag opined that plaintiff

2   was a candidate for vocational rehabilitation-training. (Tr. at 166). More recently (January

3   2005), Dr. Wood noted that plaintiff's physical deterioration and "physical deconditioning" had

4   progressed "past the point of rehabilitation/recovery," yet her weight "decreases any degree of

5   exercise and/or wt. loss that would improve surgical outcome and lessens any degree of

6   improvement." (Tr. at 299).

7          Plaintiff's failure to pursue more aggressive treatment options recommended by

8   her physician and the other examining physicians casts doubt on her credibility, as the ALJ

9   reasonably concluded. This is consistent with the Commissioner's regulations precluding

10  payment of benefits to a claimant who, absent good cause, does not follow prescribed treatment

11  that would restore her ability to work. 20 C.F.R. §§  404.1530, 416.930.

12         Finally, plaintiff contends the ALJ erred in failing to consider the testimony of her

13  mother that plaintiff "seems depressed a lot" and is unable to perform typical household chores,

14  particularly those requiring lifting or pulling or dependent upon arm, leg and back movements.

15  (Tr. at 343-345). "[F]amily members in a position to observe a claimant's symptoms and daily

16  activities are competent to testify as to her condition. Disregard of this evidence violates the

17  [Commissioner's] regulation that he will consider observations by non-medical sources as to how

18  an impairment affects a claimant's ability to work. 20 C.F.R. S 404.1513(e)(2). . . . If the ALJ

19  wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to

20  each witness." Dodrill v. Shalala, 12 F.3d 915, 918-919 (9th Cir.1993) (citation and internal

21  quotations omitted). See also Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006) (the ALJ

22  must properly discuss the testimony of lay witnesses, and if he does not, the error is not harmless

23  unless no reasonable ALJ, when fully crediting the testimony, could have come to a different

24  disability determination).

25         For reasons unknown, this ALJ, who has twice reviewed the record, failed to take

26  into account Ninth Circuit law, especially in that Dodrill's requirement of discussing the

20

1   testimony of lay witnesses had been in effect long before the ALJ's decision in this case.

2   Plaintiff's mother testified that she helped plaintiff with household chores which

3   plaintiff "is not able to do anymore." (Tr. 343.)  Plaintiff could not perform any significant

4   lifting.  (Tr. 344).  The mother helped with the shopping, and basically did all the lifting.  (Id.).

5   Plaintiff's pain medication had robbed plaintiff of her previously demonstrated ambition to work,

6   and caused thought problems as well.  (Tr. 345).  Plaintiff could no longer sit for any substantial

7   length of time, and the mother, a previous personnel assistant, would not hire plaintiff in her

8   current condition.  (Tr. 346).

9   The undersigned cannot find that every reasonable ALJ, when fully crediting the

10  mother's testimony, would have nevertheless found the same as did this ALJ.  While the court

11  has found that the ALJ of record could accept the testimony of the examining physicians over the

12  treating physician, the court cannot find that when the mother's testimony is *fully credited*, a

13  reasonable ALJ could not have opted for the treating physicians over the examining personnel.

14  Therefore, the administrative judgment cannot stand.

15  The court must consider the proper remedy for this error.  Plaintiff applied for

16  disability benefits nearly five years ago.  The case is close enough that the undersigned will not

17  send it back for a further administrative hearing where the testimony of the mother is again

18  heard.  If the mother's testimony is fully credited, there is no job plaintiff could perform in the

19  national economy.  Therefore, with one caveat, the case shall be remanded for payment of

20  benefits only.

21  There remains the possibility that pending the decision of the court, plaintiff's

22  medical condition may have improved such that she actually performed substantial gainful

23  activity.  If plaintiff's earnings record reflects such activity, and to the extent that benefits would

24  be precluded under law, no payment of benefits past the commencement of such substantial

25  gainful activity, taking into account normal "trial work periods," shall be made.  If no such

26  activity appears on plaintiff's earnings record, payments shall continue indefinitely subject to

1   normal redetermination policies.

2   CONCLUSION

3         Accordingly, the court finds the ALJ's assessment of the record and conclusions

4   not fully based on proper legal standards.  Plaintiff's motion for summary judgment is granted;

5   the Commissioner's cross-motion for summary judgment is denied.  The Clerk of Court is

6   directed to enter judgment for the plaintiff.  The matter is remanded for action consistent with

7   this order as set forth above.

8   DATED: 9/20/07                              /s/ Gregory G. Hollows

9                                               _____
                                                GREGORY G. HOLLOWS
                                                U.S. MAGISTRATE JUDGE
10

    GGH5:Rallens1609.ss

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26